# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| **DUSTIN S. STEINHAUS and** | ) | |
| **MELANIE B. STEINHAUS,** | ) | **Case No. 06-00429-TLM** |
| | ) | |
| Debtors. | ) | **MEMORANDUM OF DECISION** |
| _____ | ) | |

## INTRODUCTION

Idaho Central Credit Union ("Creditor") filed a "Motion to Confirm Termination of the Automatic Stay, Compel Surrender of Vehicle, and Authorize Foreclosure upon Vehicle" in this chapter 7 case. *See* Doc. No. 20 ("Motion"). Creditor contends the 2005 amendments to the Bankruptcy Code not only eliminated a debtor's right to a "ride-through" option for personal property securing a debt, but also expanded creditors' arsenal of possible relief should they try.

The Motion was heard on July 17, 2006. Even though no objections to the Motion were filed by Dustin and Melanie Steinhaus ("Debtors") and no parties appeared in opposition at hearing, the Court took the matter under advisement to consider whether the relief Creditor sought could properly be granted.[1]

---

[1] *See Roberts v. Nat'l Mortgage Servs. (In re Roberts)*, 98.4 I.B.C.R. 106 (Bankr. D. Idaho 1998) (even in "default" situations where opposition is lacking, the Court still must determine whether it is appropriate to enter the relief requested) (citing *Kubick v. Fed. Deposit Ins. Corp. (In re Kubick)*, 171 B.R. 658, 662 (9th Cir. BAP 1994)).

MEMORANDUM OF DECISION - 1

The Court concludes that an order will be entered confirming the termination of the automatic stay as to Creditor and its collateral due to Debtors' failure to redeem the property or reaffirm the debt to Creditor within the time established by the amended Code.  However, the Court concludes Creditor's additional desired relief – an order compelling Debtors' surrender of the property, and an order authorizing Creditor's foreclosure – will not be granted.

This Decision constitutes the Court's findings of fact and conclusions of law on this contested matter.  Fed. R. Bankr. P. 7052, 9014.

## BACKGROUND AND FACTS

Debtors filed a voluntary chapter 7 petition on April 20, 2006, a date subsequent to the October 17, 2005 effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8, 119 Stat. 23 (April 20, 2005).  BAPCPA's provisions govern Debtors' case and this Motion.[2]

Debtors purchased a 2001 PT Cruiser in October of 2004, granting Creditor a purchase money security interest in the vehicle.  *See* Motion at Ex. A.  *See also* Doc. No. 1 at sched. D.[3]

When they filed their petition and schedules, Debtors also filed a "Chapter

---

[2] All citations are to the BAPCPA 2005 Code unless otherwise indicated.

[3] Debtors' schedules are considered under Fed. R. Evid. 201 and 801.  Their schedule D indicates the car is worth $7,000.00 and they owed Creditor at filing $8,726.00 on a "purchase money security" claim against the vehicle.

MEMORANDUM OF DECISION - 2

7 Individual Debtor's Statement of Intention" with respect to property subject to a security interest ("Form 8").[4]  Form 8 has a place for debtors to indicate, as to each creditor or lessor and each described item of secured or leased property, whether they intend to surrender the property, claim the property as exempt, redeem the property under § 722, or reaffirm the debt under § 524(c).

Rather than choose from the options listed in Form 8 with respect to this vehicle, Debtors inserted language stating their intention was to "retain [the PT Cruiser] and continue to make regular payments."  Doc. No. 1 at Form 8.  There is no evidence that Debtors have failed to perform that described intention, *i.e.*, they clearly have retained the car, and Creditor does not dispute that the payments have been maintained.

The meeting of creditors under § 341(a) was held on May 18, 2006.  On May 22, the trustee filed a report of no distribution.  On June 20, Creditor filed its Motion and noticed the same for hearing.  The hearing on the Motion was held on July 17.  Debtors were granted a discharge on July 31, 2006.  It is clear from the record that Debtors have neither redeemed the vehicle nor reaffirmed the debt to Creditor.

Creditor's Motion seeks an order "confirming that the automatic stay was terminated by operation of law," citing "§ 521(6)" [*sic*, § 521(a)(6)].  In addition,

---

[4]  Official Form 8 was modified in October 2005, to adapt it to BAPCPA.  Interim Fed. R. Bankr. P. 1007(b)(2) requires its use.  Debtors used the revised Form.

MEMORANDUM OF DECISION - 3

Creditor requests the Court's order "compel the Debtors to surrender the Vehicle

to [Creditor], and . . . authorize [Creditor] to foreclose upon the Vehicle."

As noted, Debtors did not appear at hearing and have never filed any

opposition or other statement of position.[5]

**DISCUSSION AND DISPOSITION**

### A. "Ride-through" prior to BAPCPA

The requirement that individual debtors in chapter 7 cases file a statement

of intention with respect to secured consumer debts existed prior to BAPCPA and

was found in § 521(2)(A), which provided:

> (2) if an individual debtor's schedule of assets and liabilities
> includes consumer debts which are secured by property of the estate-
>
>> (A) within thirty days after the date of the filing of a petition
>> under chapter 7 of this title or on or before the date of the
>> meeting of creditors, whichever is earlier, or within such
>> additional time as the court, for cause, within such period
>> fixes, the debtor shall file with the clerk a statement of his
>> intention with respect to the retention or surrender of such
>> property and, *if applicable*, specifying that such property is
>> claimed as exempt, that the debtor intends to redeem such
>> property, or that the debtor intends to reaffirm debts secured
>> by such property[.]

11 U.S.C. § 521(2)(A) (1984) (emphasis added). *See also In re Donald*, 343 B.R.

524, 529 (Bankr. E.D.N.C. 2006) (discussing history of § 521(2)).

---

[5] The only indication of what Debtors might be thinking comes from an allegation of Creditor in the Motion: "[Creditor] has been in communication with the debtors' counsel regarding return of the Vehicle, and [Creditor] has been informed that it is not entitled to foreclose upon the Vehicle because there is no outstanding default under the loan documents, and that if [Creditor] seeks to take possession and foreclose upon the Vehicle, the Debtors will pursue a claim for damages against [Creditor] for wrongful foreclosure." Doc. No. 20 at 3.

MEMORANDUM OF DECISION - 4

Subparagraph (A) thus required a debtor, in regard to property subject to a security interest, to announce an intention to either retain or surrender such property, and then "if applicable" to further indicate an intention including redemption or reaffirmation.[6]  Section 521(2)(B) went on to require the debtor to perform that stated intention within forty-five days after filing the statement.  11 U.S.C. § 521(2)(B) (1984).  Section 521(2)(C) stated that "nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title."  11 U.S.C. § 521(2)(C) (1984).

The Ninth Circuit analyzed § 521(2) in *McClellan Fed. Credit Union v. Parker (In re Parker)*, 139 F.3d 668 (9th Cir. 1998), *cert. denied* 525 U.S. 1041 (1998).  *Parker* involved a debtor who attempted to reaffirm a debt secured by a vehicle.  The bankruptcy court refused to approve the reaffirmation agreement as in the debtor's best interest holding that, even without a reaffirmation agreement, the debtor could keep the property as long as the debtor's payments remained current.  *Id.* at 670.

The Ninth Circuit thus faced a question that had divided bankruptcy and circuit courts: "whether reaffirmation or redemption . . . are the debtor's only alternatives, or whether . . . a debtor may simply hold on to the collateral securing

---

[6] *See also Donald*, 343 B.R. at 530-31 (discussing judicial analysis of § 521(2)(A) requirements).

MEMORANDUM OF DECISION - 5

the loan and continue making payments, without electing whether to redeem the property or reaffirm the debt." *Id.* at 672.[7]  *Parker* held that the phrase "if applicable" in § 521(2)(A) rendered the list of alternatives non-exclusive. *Id.* at 673.  That is, if the debtor wished to redeem the property or reaffirm the debt, he or she had to specify (and then timely perform) that intention, but the debtor was not required to redeem or reaffirm in order to retain possession. *Parker* also relied on § 521(2)(C)'s statement that subparagraphs (A) and (B) did not alter the debtor's rights in the property.  That language confirmed "[t]he debtor's other options remain available" and that the statute did not require the debtor to choose among *only* those alternatives listed in § 521(2)(A). *Id.*

Therefore, prior to BAPCPA, the Ninth Circuit recognized an option not specifically listed in § 521(2) for debtors with property securing a consumer debt. This option, often referred to as a "ride-through" because the property rode through the bankruptcy case unaffected,[8] allowed a debtor to keep the collateral as long as he or she maintained timely payments to the secured creditor, and also

---

[7] *See Bankr. Receivables Mgmt. v. Lopez (In re Lopez)*, 345 F.3d 701, 706-07 (9th Cir. 2003) (following *Parker* and noting a split of authority); *see also Donald*, 343 B.R. at 530-31 (noting circuit decisions reaching the conclusion that a fourth option existed, and circuit decisions disagreeing); *see also* 4 Collier on Bankruptcy ¶ 521.10[2] n.3 at 521-49 (Alan N. Resnick and Henry J. Sommer, eds., 15th ed. rev. 2006) (listing cases).

[8] It has also been called the "fourth option" or "pay and drive." *Donald*, 343 B.R. at 526. *See also Garske v. Arcadia Fin., Ltd (In re Garske)*, 287 B.R. 537, 542 (9th Cir. BAP 2002) (using "fourth option" and "ride-through"). *See also Lopez*, 345 F.3d at 706 ("retain and keep current option").

MEMORANDUM OF DECISION - 6

provided a debtor with the benefit of the discharge as to any unsecured liability.[9]

### B.  "Ride-through" under BAPCPA

Several changes wrought by BAPCPA impact the question of whether

Debtors may still choose (or effectively benefit from choosing) the "ride-through"

option.

### 1.  "Ride-through" was not eliminated by § 521(a)(2), but was significantly impacted by its incorporation of § 362(h)

BAPCPA re-designated § 521(2) as § 521(a)(2).  The only change made to

the opening clause of former § 521(2) was the elimination of the word

"consumer," thus broadening the types of debts subject to the requirements of

§ 521(a)(2).  *See* 11 U.S.C. § 521(a)(2).[10]

### a.  Amended § 521(a)(2)(A) and (B)

Subparagraph (A) was unchanged from the pre-BAPCPA version.  *See* 11

U.S.C. § 521(a)(2)(A).  With respect to subparagraph (B), BAPCPA altered the

time period within which the debtor must perform his or her intention from forty-

five days after filing the statement of intention to thirty days after the first date set

for the meeting of creditors, but left the provision otherwise intact.  *See* 11 U.S.C.

---

[9] *Garske*, 287 B.R. at 542.

[10] Section 521(a)(2) still applies only to "individual" debtors, thus excluding corporations, partnerships and other entities.  *See generally* §§ 101(13), 101(41).  However, it now reaches all individual debtors' secured debts, business as well as consumer.  *See In re Root*, No. 06-00090, 2006 WL 1050687, at *3 (Bankr. N.D. Iowa Apr. 11, 2006) (addressing failure of debtor's § 521 statement of intention to address secured claim of John Deere Credit on farm equipment, and rejecting debtor's contention that § 521(a)(2) applied only to consumer debts).

MEMORANDUM OF DECISION - 7

§ 521(a)(2)(B).

Thus, the BAPCPA changes found in § 521(a)(2)(A) and (B) do not eliminate or affect the "ride-through" option.  *Donald*, 343 B.R. at 532-33.

### b.    Amended § 521(a)(2)(C) and § 362(h)

The provisions of former § 521(2)(C), providing generally that a debtor's rights in property are not altered by subparagraphs (A) or (B) – provisions *Parker* and other courts found critical to the "ride-through" option – remain intact in § 521(a)(2)(C), but there is now the proviso "except as provided in section 362(h)."  *See* 11 U.S.C. § 521(a)(2)(C).

Section 362(h)[11] was added by BAPCPA and provides for termination of the automatic stay under certain circumstances:

> (1) In a case in which the debtor is an individual, the stay provided by subsection (a) is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired lease, and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2)
>
> > (A) to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such personal property or retain it and, if retaining such personal property, either redeem such personal property pursuant to section 722, enter into an agreement of the kind

---

[11]  Relief under § 362(h) is limited to "personal property" securing in whole or part a claim or subject to an unexpired lease.  Section 521(a)(2) requires a statement of intention and performance of such intention as to all property (*i.e.*, real as well as personal) securing debts.  Thus, simply because a creditor appears on Form 8 does not guarantee the creditor has recourse to § 362(h).

MEMORANDUM OF DECISION - 8

specified in section 524(c) applicable to the debt secured by such personal property, or assume such unexpired lease pursuant to section 365(p) if the trustee does not do so, as applicable; and

(B) to take timely the action specified in such statement, as it may be amended before expiration of the period for taking action, unless such statement specifies the debtor's intention to reaffirm such debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms.

Section 362(h)(1)(A) thus terminates the stay "if the debtor fails within the applicable time set by section 521(a)(2) . . . to file timely any statement of intention required under section 521(a)(2) with respect to such personal property *or to indicate in such statement that the debtor will either surrender such personal property or retain it and, if retaining such personal property, either redeem such personal property pursuant to section 722, [or] enter into an agreement of the kind specified in section 524(c) . . . .*" (emphasis added).

Even though BAPCPA's amendments to § 521(a)(2)(A) and (B) made no change sufficient to eliminate a "ride-through," and debtors could conceivably insert in their statement of intention language to the effect that they will "retain collateral and continue to make regular payments" (as Debtors did here) without violating those sections, such a stated intention does *not* comply with § 362(h)(1)(A)'s further limitation.  That limitation flows from the language: "or to indicate in such statement that the debtor . . . if retaining such personal property,

MEMORANDUM OF DECISION - 9

[will] either redeem [it or] enter into an agreement [reaffirming] the debt[.]"[12]

Because § 362(h) is specifically referenced in § 521(a)(2)(C) as an "exception" to debtors' otherwise unaffected rights in property, the sections must be construed together. *Donald*, 343 B.R. at 534 (citing 3 Collier on Bankruptcy ¶ 362.10A at 362-120). When that approach is followed, the "ride-through" option on personal property securing an individual's debt is seriously impacted if not "eliminated" outright. *See In re Boring*, 346 B.R. 178, 180 (Bankr. N.D. W. Va. 2006) (holding the automatic stay terminated under § 362(h)(1) when the debtor filed a timely statement of intention saying she would "retain and pay" and did not indicate that she would either redeem the property or reaffirm the debt); *In re Rowe*, 342 B.R. 341, 346-47 (Bankr. D. Kan. 2006) (same; debtor's stated intention was to "[r]etain collateral and continue to make regular payments"); *In re Craker*, 337 B.R. 549, 551 (Bankr. M.D.N.C. 2006) (same).[13]

In the present case, as in *Boring*, *Rowe* and *Craker*, Debtors' strategy of

---

[12] Creditor did not in the instant case argue that the stay should be deemed terminated by reason of § 362(h). Comments at hearing lead the Court to believe Creditor may have concluded § 362(h) was inapplicable because (a) Debtors' statement of intention was "timely filed" and (b) Debtors took the action they said they would take. Creditor did not appear to focus on whether the timely filed statement of intention transgressed the limitations on Debtors' options contained in § 362(h)(1)(A).

[13] Though judicial construction of these provisions has only recently commenced, bankruptcy courts appear consistent in enforcing BAPCPA's new § 362(h). Whether this "eliminates" the fourth option is less clear. These courts simply hold the stay is terminated under BAPCPA's new provisions, and decline to use "elimination" terminology. *See*, *e.g.*, *Boring*, 346 B.R. at 180 (BAPCPA's language "greatly impacts the prior law"). And *Donald* flatly states "[t]ermination of the stay [under § 362(h)(1)(A)], however, does not mean that the 'ride-through' option is eliminated." 343 B.R. at 534.

MEMORANDUM OF DECISION - 10

using *Parker*-esque "ride-through" language in their Form 8 results in termination
of the automatic stay with respect to the vehicle collateral (and that the vehicle is
also no longer property of the estate) because Debtors' statement did not propose
either redemption or reaffirmation.[14]

It appears, therefore, the stay in this case was terminated as to Creditor and
the PT Cruiser under § 362(h)(1)(A) thirty days after the filing of the petition
(May 22, 2006).[15]  Recall, though, Creditor never advanced its Motion under

---

[14]  A possible question exists as to *when* the stay terminates.  *Boring* held the stay
terminated 30 days after the petition date.  346 B.R. at 180.  So did *Craker*.  337 B.R. at 551.  In
each of those cases, it appears the statement of intention using "ride-through" language was filed
simultaneously with the petition.  *See Boring*, 346 B.R. at 179; *Craker*, 337 B.R. at 550.  The
same situation is presented in the instant case.

As noted, § 362(h)(1)(A) speaks to a failure to timely file a statement of intention *or* to
indicate in such statement the intent to redeem or reaffirm.  Though Debtors timely filed their
Form 8 on the same day as the petition for relief, was the stay terminated the very day it arose
because that Form 8 was not § 362(h)(1)(A) compliant, *i.e.*, because Debtors failed to indicate
therein one of the two available options?  The Court thinks not.

Statements of intention may be filed within 30 days of the petition (or on or before the
date of the § 341(a) meeting, if earlier) under § 521(a)(2)(A).  (Fed. R. Bankr. P. 1007(b)(2) and
(c) previously required the statement of intention to be filed with the petition or within 15 days.
Interim Fed. R. Bankr. P. 1007(c), addressing time limits, eliminates any reference to Rule
1007(b)(2) regarding the statement.)  Debtors have a right to amend that statement without leave
of court "at any time before the expiration of the period provided in § 521(a) of the Code."
Interim Fed. R. Bankr. P. 1009(b).  *See also* 4 Collier on Bankruptcy ¶ 521.10[2] at 521-50.

It is possible, therefore, that a non-compliant statement of intention could be amended by
a debtor within the first 30 days of the case to show an intent to redeem or reaffirm, thus avoiding
§ 362(h)(1)(A) relief.  Additionally, § 362(h)(2) gives the trustee the right to make a motion
before that 30 day period has expired, in order to preserve the property and its value for the
estate.  Given these factors, the Court concludes the stay cannot be deemed terminated under
§ 362(h)(1) at least until the deadline of § 521(a)(2)(A) has passed for the debtor to timely file (or
amend) or for the trustee to make a § 362(h)(2) request.  *But see In re Norton*, No. 06-30893,
2006 WL 2349172, at *3-4 (Bankr. E.D. Tenn. Aug. 2, 2006) (addressing a § 362(h)(2) request
and finding termination could not occur until the deadline of § 521(a)(2)(B) had also passed).

[15]  Debtors filed their petition on April 20, 2006.  Thirty days after the petition date would
have been Saturday, May 20, 2006.  The deadline to file or amend, under Interim Fed. R. Bank.
P. 9006(a), would have been Monday, May 22, 2006.

MEMORANDUM OF DECISION - 11

§ 362(h).  It asked for relief solely under § 521(a)(6).  The Court will decline to

enter its order in this case by reason of § 362(h), and will proceed to a

consideration of the BAPCPA provisions Creditor asserts.[16]

### 2.   Elimination of "ride-through" by § 521(a)(6)

BAPCPA's new § 521(a)(6) states that a debtor shall

> in a case under chapter 7 of this title in which the debtor is an
> individual, not retain possession of personal property as to which a
> creditor has an allowed claim for the purchase price secured in
> whole or in part by an interest in such personal property unless the
> debtor, not later than 45 days after the first meeting of creditors
> under section 341(a), either –
>
>> (A) enters into an agreement with the creditor pursuant to
>> section 524(c) with respect to the claim secured by such
>> property; or
>>
>> (B) redeems such property from the security interest pursuant
>> to section 722.
>
> If the debtor fails to so act within the 45-day period referred to in
> paragraph (6), the stay under section 362(a) is terminated with
> respect to the personal property of the estate or of the debtor which
> is affected, such property shall no longer be property of the estate,
> and the creditor may take whatever action as to such property as is
> permitted by applicable nonbankruptcy law . . . .

11 U.S.C. § 521(a)(6).[17]

---

[16]  *Accord Rowe*, 342 B.R. at 347 (following analysis of § 362(h), considering whether § 521(a)(6) "also applies").

[17]  A number of important conditions are present.  Preliminarily, § 521(a)(6) applies only in chapter 7 cases and, even then, only in cases where the debtor is an individual.  This appears generally consistent with § 521(a)(2)(A).  However, § 521(a)(6) addresses only personal property while § 521(a)(2)(A) applies to all property of the estate securing debts.  Other limitations of § 521(a)(6), *e.g.*, that the creditor have an "allowed claim" and that such claim is for the

(continued...)

MEMORANDUM OF DECISION - 12

Section 521(a)(6) gives an individual chapter 7 debtor two options, and only two options, for retaining personal property in which a creditor holds a purchase money security interest: redemption or reaffirmation.  It does not allow a debtor to choose a "retain-and-pay" or a "ride-through."  *See Norton*, 2006 WL 2349172, at *5 ("[B]ased upon the statutory language of § 521(a)(6), BAPCPA extinguished the 'ride-through' option[.]"); *Donald*, 343 B.R. at 534 ("Unlike the BAPCPA amendments to § 521(a)(2) and § 362(h), which do not by themselves eliminate the 'ride-through' option, the amendment to § 521(a)(6) made by BAPCPA does.").[18]

### a.   Are there preconditions as to the status of the creditor before § 521(a)(6) applies?

The nascent case law has identified, however, problems with the statute as Congress drafted it.  The problems have the potential to severely limit the reach of § 521(a)(6) to few – and perhaps no – creditors.

### i.   "Allowed" claims

The first question is whether § 521(a)(6) can be applied at all where the secured creditor, such as Creditor here, has not filed a proof of claim.[19]  The

---

[17](...continued)
"purchase price," are addressed *infra*.

[18] Though it found other issues with these "confusing, overlapping, and somewhat self-contradictory" amendments, even *Donald* "is convinced that termination of the 'ride-through' option is what Congress intended."  343 B.R. at 529, 540.

[19] Debtors' case was noticed out to creditors as a "no asset" chapter 7 and creditors were
(continued...)

MEMORANDUM OF DECISION - 13

statute's language limits the debtor's rights regarding "personal property as to which a creditor has an *allowed claim* for the purchase price secured in whole or in part by an interest in such personal property." Use of the term "allowed claim" in § 521(a)(6) has already generated a split of judicial opinion.

*Rowe* notes the phrase "allowed claim" is not expressly defined in the Code. 342 B.R. at 347. That is clearly true. *See*, *e.g.*, § 101 (the general definitional section of the Code, which defines claim at § 101(5) but does not define "allowed" or "allowed claim."). Still, *Rowe* observes, the phrase "allowed claim" has "a fixed and clear meaning in bankruptcy." 342 B.R. at 348. This Court agrees.

That meaning flows from § 501, which provides that proofs of claim may be filed, and § 502(a), which provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is *deemed allowed*, unless a party in interest . . . objects." Section 502(b) continues by providing that, following any objection to a claim, "the court, after notice and a hearing, shall determine the amount of such claim . . . as of the date of filing of the petition, and shall *allow* such claim in such amount" except to the extent § 502(b)(1)-(9) apply. Finally, § 502(c) provides that there "shall be estimated for purpose *of allowance* under this

---

[19](...continued)
advised not to file proofs of claim. *See* Fed. R. Bankr. P. 2002(3). *See also* Official Form B9A (notice of commencement of case; chapter 7 individual or joint debtor no asset case), *and compare* Official Form B9C (notice of commencement of case, chapter 7 individual or joint debtor asset case). A review of the CM/ECF docket in the instant case reflects no proofs of claim have been filed.

MEMORANDUM OF DECISION - 14

section" certain contingent or unliquidated claims or rights to payment arising

from a right to equitable remedy for breach of performance.

*Rowe* therefore found the use of the word "allowed" in § 521(a)(6)

confounding:

> [I]n a no asset Chapter 7 case, a creditor will not usually file a proof
> of claim, and there is no statutory basis for a claim to be "deemed"
> filed.  The consequence is that generally in a [no asset] Chapter 7
> case there will not be an "allowed claim," and the condition for
> applicability of §  521(a)(6) will not be satisfied.
>
> This construction of "allowed claim" is problematic.  The
> Court does not believe that Congress could have intended the phrase
> "allowed claim" to have the clear meaning ascribed to it by
> operation of § 502, since this construction of "allowed claim"
> renders [§ 521(a)(6)] applicable only in asset chapter 7 cases when a
> secured creditor files a proof of claim after the clerk has given notice
> that assets are available for distribution.

342 B.R. at 348.  Following consideration of the legislative history, *Rowe*

concluded Congress intended § 521(a)(6) to apply to no asset as well as asset

cases and that "this is one of those rare cases where the literal application of the

statute would produce a result demonstrably at odds with the intention of its

drafters."  *Id.* at 349.

*Donald* agreed with *Rowe* that this issue was unavoidably presented by the

language used in § 521(a)(6), but "disagree[d] that the word 'allowed' should be

ignored."  343 B.R. at 535-36.  *Donald* would hold Congress to its chosen words,

and thus require the filing of a proof of claim as a prerequisite to the use and

MEMORANDUM OF DECISION - 15

benefit of § 521(a)(6).  *Id.* at 536.[20]

BAPCPA has regularly sent the courts and practitioners to the well of

statutory construction authorities.  The root principle is well established:

> In considering [what a statute means], we begin with the text.  We
> have "stated time and again that courts must presume that a
> legislature says in a statute what it means and means in a statute
> what it says there."  When the statutory "language is plain, the sole
> function of the courts – at least where the disposition required by the
> text is not absurd – is to enforce it according to its terms."

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 126 S. Ct. 2455, 2459 (2006)

(citations omitted).  Likewise, in a seminal case dealing with construction of the

Bankruptcy Code, the Court stated:

> The plain meaning of legislation should be conclusive, except in the
> "rare cases [in which] the literal application of a statute will produce
> a result demonstrably at odds with the intentions of its drafters."

*United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 242 (1989) (quoting *Griffin*

*v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)) (alteration in original).

This Court agrees with *Rowe* that the phrase "allowed claim" in § 521(a)(6)

is one of those "rare cases."  *See* 342 B.R. at 349.  There is no logical reason why

Congress would differentiate between creditors in asset cases and those in no asset

---

[20]  *Donald* opines such a filing is a "reasonable prerequisite" and that if a debtor is to be
exposed to stay relief in the absence of monetary default, "it is not too much to require that the
secured creditor file a proof of claim.  At a minimum, the proof of claim would establish the
amount of the claim and would provide the documentation that supports the creditor's invocation
of an ipso facto clause."  343 B.R. at 536.  Of course, a creditor's well-pleaded motion for relief
from stay or to confirm termination of stay would do so as well.  In this District, the local rules
require specific factual assertions and copies of the loan documents in all stay motions.  *See* LBR
4001.2(b).

MEMORANDUM OF DECISION - 16

cases, allowing the former but not the latter relief if debtors use a "ride-through."

And the Court is unaware of Congress ever articulating any such distinction.[21]

Strictly reading the term "allowed" and limiting § 521(a)(6) relief to

creditors with filed proofs of claim also appears inconsistent with the balance of

the amendments.  As noted above, BAPCPA gives prompt stay relief under

§ 521(a)(2) and § 362(h) to creditors – whether or not they have filed proofs and

have "allowed" claims – where debtors fail to timely file a statement of intention

or to indicate in that statement an intent to redeem personal property collateral or

reaffirm the related debt.  It would be odd that creditors in both asset and no asset

chapter 7 cases could fall within and obtain relief under § 521(a)(2) and § 362(h),

but only those in asset cases who actually file and have allowed claims would fall

within § 521(a)(6).[22]

The Court concludes the word "allowed" has no clearly intended function

---

[21] For example, the section of the House Report dealing with § 521(a)(6) makes no distinction between asset cases and no asset cases:

> Section 304(1) of [BAPCPA] amends section 521(a) of the Bankruptcy Code to provide that an individual who is a chapter 7 debtor may not retain possession of personal property securing, in whole or in part, a purchase money security interest unless the debtor, within 45 days after the first meeting of creditors, enters into a reaffirmation agreement with the creditor, or redeems the property. If the debtor fails to so act within the prescribed period, the property is not subject to the automatic stay and is no longer property of the estate.

H.R. Rep. No. 109-31, pt.1, at 70-71 (2005).

[22] Admittedly, much of the structure of these several provisions is odd.  *See*, *e.g.*, *Norton*, 2006 WL 2349172, at *6 (discussing the "inconsistent" § 521(a)(2) and (a)(6) deadlines). The point here is that the potentially disparate treatment of debtors and creditors in asset cases versus no asset cases under § 521(a)(6) is so odd as to indicate the absence of Congressional intent that it be so.

MEMORANDUM OF DECISION - 17

when the BAPCPA amendments on the "ride-through" issue are considered as a whole.[23]  Using the language of *In re Kane*, 336 B.R. 477 (Bankr. D. Nev. 2006),[24] because the term allowed claim has an accepted plain meaning in bankruptcy, § 521(a)(6)'s "text makes sense but yields a perverse result."  *Id.* at 486.  Thus it seems "that a mistake of expression (rather than of legislative wisdom) has been made."  *Id.* at 487 (citations omitted).[25]

For these reasons, this Court concludes, as did *Rowe*, that the term "allowed" as used in § 521(a)(6) may be disregarded, and a secured creditor's filing of a proof of claim is not a prerequisite for relief under that section.

### ii.       Claims "for the purchase price"

The next issue is similar.  The language of § 521(a)(6) provides a debtor may not retain personal property "as to which a creditor has an allowed claim *for the purchase price* secured in whole or in part" by such property. (emphasis added).

*Donald* addressed this language, finding it not the same as "purchase

---

[23] *See United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370 (1988) ("Statutory construction . . . is a holistic endeavor.").

[24] *Kane* addressed § 522(p).  It found the plain meaning of § 522(p) clear but not in accord with the demonstrable intent of Congress to close the "mansion loophole."  It also found it unnecessary to give meaning to and strictly apply the words used, where doing so lacked "plausible purpose" and where "there is no feasible rationale or policy" that would be implemented.  *Id.* at 487-89.

[25] *Accord Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001) (noting the canon of construction requiring courts to give effect to each word of a statute "if possible" is sometimes offset by the canon permitting courts to reject words "as surplusage" if "inadvertently inserted or if repugnant to the rest of the statute[.]") (citation omitted).

MEMORANDUM OF DECISION - 18

money security interest" (or other similar and familiar terms in consumer commerce), nor the same as a secured claim "attributable in whole or in part to the purchase price of such property." 343 B.R. at 536-37. The court concluded that under a plain meaning construction, a "claim for the purchase price" must be for the "full purchase price" in order to qualify under § 521(a)(6). *Id.* at 537. It did so even while observing that "[c]reditors will rarely have an allowed claim for the full purchase price of personal property" because of down payments and installment payments. *Id.* Nevertheless, it laid the problem at the feet of Congress, which could have used (but did not) accepted terminology or that found elsewhere in the Code. *Id.*

This Court respectfully disagrees. As with the use of "allowed" claims earlier in the same paragraph, it appears unmistakable that Congress drafted, or allowed to be drafted by others and then enacted, provisions with "loose" and imprecise language. The legislative history, quoted *supra*, indicates an intention that § 521(a)(6) encompass "personal property *securing, in whole or part, a purchase money security interest*." (emphasis added).[26] In reviewing the several places in BAPCPA where similar but not identical phrasings are used, the Court can divine no cogent, or even plausible, reason why Congress would have intended to limit § 521(a)(6) relief to only those creditors who have secured claims

---

[26] *Donald* acknowledges this legislative history but concludes the "plain and specific language of the statute must control." 343 B.R. at 537 n.9.

MEMORANDUM OF DECISION - 19

for the "full" purchase price.[27]

The Court thus concludes that creditors with purchase money security interests in personal property, in individual chapter 7 cases, qualify for the protection of § 521(a)(6) even if their claim is for less than the full purchase price.[28]

Therefore, the benefit of § 521(a)(6) is available to Creditor in this case, even though it did not file a proof of claim and even though its claim, given the initial financing of the transaction in October, 2004 and payments made since, is not for the full purchase price.  Further, Debtors neither redeemed the property nor entered into a reaffirmation agreement within the 45 days after the meeting of creditors as § 521(a)(6) requires.[29]

The Court can now turn to the crux of Creditor's Motion: the consequences of Debtors' failure to comply with § 521(a)(6).

---

[27] The tension between arguable intention and plain meaning would have been significantly more difficult for the Court had BAPCPA actually used the word "full" in its enactment.  However, that "for the purchase price" means "for the [full] purchase price" is a conception derived by *Donald*'s search for plain meaning and recourse to definitions generally of "purchase price."  343 B.R. at 536.

[28] *Boring*, *Rowe*, *Norton* and *Craker* all use the phraseology "purchase money security interest" (or an equivalent) in dealing with § 521(a)(6), and none address the issue identified in *Donald*.

[29] Creditor's Motion citing § 521(a)(6) was filed before that 45 day period had expired, and was arguably premature.  However, the period ran before the hearing was held, without reaffirmation or redemption by Debtors.  Under the circumstances, the Court need not address whether Creditor left the starting gate early.

MEMORANDUM OF DECISION - 20

### C.    Creditor's available remedies under § 521(a)(6)

Certain consequences are express under § 521(a)(6): "the stay under section 362(a) is terminated with respect to the personal property of the estate or of the debtor which is affected, such property shall no longer be property of the estate, and the creditor may take whatever action as to such property as is permitted by applicable nonbankruptcy law[.]"  The Court believes it appropriate to enter an order confirming this relief in disposing of this contested matter.[30]

Creditor's Motion wants more: an order compelling Debtors' surrender of the property, and one authorizing Creditor's foreclosure on the property.

### 1.    Compelling surrender of possession

Creditor focuses on the first sentence of § 521(a)(6), arguing the phrase "the debtor shall . . . not retain possession" of the collateral at least implicitly authorizes the Court to order Debtors to surrender the vehicle to Creditor. However, § 521(a)(6)'s express relief, quoted above, unambiguously provides Creditor with a comprehensive remedy for Debtors' failure to redeem or reaffirm. This remedy consists of three parts: termination of the stay, abandonment (*i.e.*, the property is no longer property of the estate), and explicit permission for Creditor

---

[30]  BAPCPA added a new section stating: "On request of a party in interest, the court shall issue an order under subsection (c) confirming that the automatic stay has been terminated." *See* § 362(j).  There is disagreement as to whether § 362(j) is applicable to either § 362(h) or § 521(a)(6).  *Compare In re Record*, No. 06-00553, 2006 WL 2347424, at *2 (Bankr. M.D. Fla. July 24, 2006), *with In re Dienberg*, No. 06-10160, 2006 WL 2505983 (Bankr. N.D. Ind. Aug. 30, 2006).  This Court does not enter its order today by reason of § 362(j) and will save that discussion for another day.

MEMORANDUM OF DECISION - 21

to proceed as permitted by state law.[31]

Had Congress intended to also create the remedy of an immediate order of possession, it logically would have been included in this listing of relief in § 521(a)(6). It was not.[32] The Court declines to interpret § 521(a)(6) as authorizing the Court to provide additional remedies. "[I]t is not up to [the court] to read other remedies into the carefully articulated set of rights and remedies set out in the Bankruptcy Code." *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002).

An order compelling surrender further appears inconsistent with the idea that "the creditor may take whatever action as to such property as is permissible by applicable nonbankruptcy law" as provided by § 521(a)(6). This language acknowledges the importance of state law regarding the competing interests and rights of debtors and creditors in collateral following the termination of the stay. That Congress intended to either supplement or supplant such law by compelling surrender of possession before adjudication of state law rights is questionable.

This Court's decision is consistent with the only other court to address this

---

[31] One can read § 521(a)(6)'s first sentence as stating a substantive rule – that Debtors may not retain the property at issue unless they redeem or agree to reaffirm – and its second sentence as providing the remedy for a violation of that substantive rule – allowing Creditor to regain possession of the property in any manner consistent with nonbankruptcy law, unhindered by the stay or by characterization of the property as property of the estate.

[32] *Accord* 4 Collier on Bankruptcy ¶ 521.10[5] at 521-61 ("It must be assumed that if Congress intended any other consequences to result from such failures it would have stated them in these detailed new provisions.").

MEMORANDUM OF DECISION - 22

particular issue.  In *Rowe*, the court considered a motion to compel the turnover of
collateral to a creditor holding a purchase money security interest in the property
where the debtor had stated an intention to retain possession and continue
payments.  342 B.R. at 343-44.  After concluding such a "ride-through" was not
available under BAPCPA, *id.* at 346, the court held the second half of § 521(a)(6)
provided the creditor's only remedy for the debtor's failure to choose redemption
or reaffirmation:

> [Section] 521(a)(6) . . . has the effect of termination of the stay
> because of the Debtors' failure to redeem the collateral or reaffirm
> the secured debt.  Upon termination of the stay, however, the
> Creditor's rights are those under applicable nonbankruptcy law.
> Section 521(a)(6) does not require or empower the Court to order
> turnover of the collateral to the Creditor.

*Id.* at 350.  As that court even more succinctly put it: "The remedy is not removal
of the property from the debtor, it is termination of the stay."  *Id.* at 349.[33]

### 2.      Authorizing foreclosure

For similar reasons, the Court concludes the request for an order
"authorizing foreclosure" is improper.  Such relief is not provided for by the
amended statute.[34]  And it is not required to effectuate the relief there provided,

---

[33] While *Donald* did not reach this issue, it noted:  "The 'not retain' concept is new to the
Bankruptcy Code, and neither explained nor implemented by the statute.  The statute does not
specify to whom possession of the property should be given, although the secured creditor or the
trustee are the most likely candidates.  There also is no enforcement provision in the statute to
take effect if the debtor retains possession without redeeming or reaffirming the debt."  343 B.R.
at 535 n.6.

[34] Collier states: "[Section 521(a)(6)] does not authorize a creditor to repossess property.
(continued...)

MEMORANDUM OF DECISION - 23

*i.e.*, stay termination.

Creditor is asking the Court to rule on something not actually tried.  No evidence was presented regarding Creditor's right to foreclose, and Creditor submitted no briefing on the subject.  It also asks the Court to rule on matters not necessarily at issue under § 521(a)(6), which concerns a debtor's timely compliance with the redeem or reaffirm requirements.  Relief under § 521(a)(6) is not dependent on proof that the creditor is or would be entitled to foreclose in the event the stay is terminated.

Moreover, an order "authorizing" foreclosure would appear to place this Court in the stead of the state court which, following stay termination and effective abandonment of the collateral under § 521(a)(6), will be the forum to decide the propriety of "action[s] as to such property as [are] permitted by applicable nonbankruptcy law."  This Court has no reason to usurp the role or prerogatives of the state court in such matters.

Finally, an order of this Court purporting to "authorize" Creditor's foreclosure seems, particularly given § 521(a)(6) abandonment, something that is

---

[34](...continued)
It leaves that issue to applicable nonbankruptcy law.  There are likely to be serious questions under nonbankruptcy law about whether repossession from a debtor who is current in payments is in good faith, whether a creditor has waived a default by accepting later payments, or whether other provisions of state law would prohibit repossession."  4 Collier on Bankruptcy ¶ 521.10[5] at 521-56.

MEMORANDUM OF DECISION - 24

not only unnecessary but perhaps not properly within its jurisdiction.[35]  Even if

arguably within this Court's jurisdiction, such an order would be a gratuitous

semaphore to the Idaho state court which, as noted below, may be required to

consider precisely that issue.

### 3.      Implications of § 521(d)

The next aspect to this issue is BAPCPA's addition of § 521(d), which

provides in relevant part:

> If the debtor fails timely to take the action specified in subsection
> (a)(6) of this section or in paragraphs (1) and (2) of section 362(h)
> . . . , nothing in this title shall prevent or limit the operation of a
> provision in the underlying lease or agreement that has the effect of
> placing the debtor in default under such lease or agreement by
> reason of the occurrence, pendency, or existence of a proceeding
> under this title or the insolvency of the debtor.  Nothing in this
> subsection shall be deemed to justify limiting such a provision in
> any other circumstance.

11 U.S.C. § 521(d).

This provision applies to default-on-filing clauses, also known as ipso facto

clauses.  Many security agreements, including the one between Creditor and

Debtors involving the PT Cruiser, contain clauses that define a default to include a

---

[35]  After the collateral is no longer property of the estate, whether or not the creditor has
the "authority" to foreclose under applicable nonbankruptcy law is an issue at least arguably
outside bankruptcy jurisdiction on the theory it is not one "arising under" the Code, "arising in"
the bankruptcy case, or "related to" the case.  *See Maitland v Mitchell (In re Harris Pine Mills)*,
44 F.3d 1431, 1435 (9th Cir. 1995) (describing "arising under" matters as those "[p]roceedings
that involve a cause of action created or determined by a statutory provision of Title 11");
*Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1193 (9th Cir. 2005) (describing
matters "arising in" a case as those that would not exist outside of bankruptcy, and matters
"related to cases under title 11" as those whose outcome could conceivably have any effect on the
bankruptcy estate being administered).

MEMORANDUM OF DECISION - 25

bankruptcy filing.[36]  An ipso facto clause renders a debtor in default upon the

filing of a bankruptcy petition, regardless of whether the debtor continues to

remain current in payments to the secured creditor and in compliance with other

obligations under the loan documents.  Section 521(d) addresses, to a degree, such

clauses:

> The significance of § 521(d)'s treatment of ipso facto clauses is simply that when a debtor fails to timely take the actions required by §§ 521(a)(6), or § 362(h)(1) or (2), the new statutory language eliminates limitations previously imposed by the Bankruptcy Code on the operation of ipso facto clauses.  Section 521(d) does not create a new statutory remedy to be used by creditors, and does not write ipso facto clauses into contracts where none exist.  Rather, it enables creditors to proceed under contractual default clauses without limitations imposed by the Bankruptcy Code.  *See In re Rowe*, 342 B.R. at 351 (Bankr. D. Kan. 2006) (emphasizing that § 521(d) "does not make such 'ipso facto' clauses sufficient to define a default in accord with nonbankruptcy law").  Creditors still must ensure that the contract, and their efforts to enforce the terms in it, do not run afoul of any applicable state laws.

*Donald*, 343 B.R. at 539.

Congress has thus elected to remove any *bankruptcy* impediment to use of

ipso facto clauses once a debtor fails to meet § 521(a)(6) or § 362(h).  But whether

Congress tried to – or even could – address state law limitations on use of such

clauses is a different matter entirely.[37]

---

[36]  *See* Doc. No. 20 at Ex. A (paragraph "G" of contract and security agreement defining "Default" to include Debtors "becom[ing] insolvent, or fil[ing] any proceeding under the U.S. Bankruptcy Code").

[37]  *Accord* 4 Collier on Bankruptcy ¶ 521.10[5] at 521-59 ("[E]ven in those cases in which an *ipso facto* clause is not made inoperable due to the effect of section 521(d), it may be, or
(continued...)

MEMORANDUM OF DECISION - 26

*Rowe* noted that, in Kansas, creditors may enforce the default terms of a

consumer credit transaction only if (a) there is a failure to make payment, or (b)

"the prospect of payment, performance or realization of collateral is significantly

impaired." 342 B.R. at 350 (citing the Uniform Consumer Credit Code as adopted

in that state, Kan. Stat. Ann. § 16a-5-109 (1995)). *Rowe* notes that Kansas state

courts "narrowly defined 'significant impairment'" and that the litigants there

agreed it was unlikely a Kansas court would find significant impairment where the

debtors were current on their payments and intended to remain so and the creditor

was adequately protected, even though debtors had filed for bankruptcy. *Id.*

Thus, in Kansas, "the practical result in many cases will be no significant change

from the pre-BAPCPA Code . . . except that the stay will be automatically lifted,"

and that "the creditor's remedy of expiration of the stay will in many cases be

illusory." *Id.* at 351-52. The Court was unwilling to provide the creditor other

remedies, including an order of turnover.

In Idaho, in order for a creditor in a "regulated consumer credit

transaction"[38] to repossess and foreclose on collateral, a debtor must first default

---

[37](...continued)
may become, inoperable due to nonbankruptcy law.").

[38]  It appears the transaction between Creditor and Debtors qualifies as a "regulated
consumer credit transaction" under Idaho Code § 28-45-107. *See* Idaho Code § 28-41-201
(territorial application); § 28-41-204 (applicability); § 28-41-301 (definitions, including
"consumer purpose," "credit," "regulated consumer credit transaction"); § 28-45-102
(applicability of limitations under *inter alia* § 28-45-107 to regulated consumer credit
transactions). Furthermore, Creditor's documents note in several places that a "consumer credit"
contract is involved. *See* Doc. No. 20 at Ex. A.

MEMORANDUM OF DECISION - 27

on his obligations under the security agreement.  *See* Idaho Code §§ 28-9-601 (secured party's rights after default), 28-9-609 (secured party's right to take possession after default).  The Idaho Code contains a limitation on the enforceability of default in consumer credit transactions that is virtually identical to that in Kansas.  *Compare* Idaho Code § 28-45-107, *and* Kan. Stat. Ann. § 16a-5-109.[39]  However, unlike Kansas, there are no reported appellate decisions in Idaho addressing the issue.  This is all the more reason for this Court to proceed cautiously.

Creditor has argued that without the Court's order of surrender and authorization of foreclosure, it will be just as unprotected from Debtors' attempted "ride-through" here as it would have been pre-BAPCPA.  This, it contends, flows from the potential inability to foreclose the security interest in the PT Cruiser until Debtors default in payment, notwithstanding that stay relief has been obtained.

While that may be true, and while BAPCPA's stay termination and elimination of bankruptcy limits on ipso facto clauses may not yield full relief from a "ride-through" attempt, this does not justify a construction of § 521(a)(6) by this Court that would add to the remedies expressly granted by Congress or invade the province of the state courts.

---

[39]  There are minor differences between Idaho Code § 28-45-107 and Kan. Stat. Ann. § 16a-5-109.  For instance, Idaho's statute uses the term "debtor," while the Kansas statute uses the term "consumer."  Idaho's statute applies to "regulated" consumer credit transactions, while Kansas' statute encompasses simply "consumer credit transaction[s]."

MEMORANDUM OF DECISION - 28

**CONCLUSION**

Because Debtors chose to retain their vehicle, they were required by § 521(a)(6) to redeem that vehicle or agree to reaffirm the debt in order to avoid termination of the automatic stay. Debtors have done neither. The automatic stay thus terminated under § 521(a)(6) on July 3, 2006, forty-five days after the meeting of creditors. Creditor's Motion will be granted to the extent it requests an order confirming termination of the stay on such date with respect to Debtors' 2001 PT Cruiser. The remainder of Creditor's Motion will be denied. An order consistent with this Decision will be entered.

DATED:  September 1, 2006

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 29